# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re,<br><br>THE ROMAN CATHOLIC BISHOP OF SAN DIEGO, a corporation sole,<br><br>Debtor.<br><br>JACOB OLIVAS, an individual; PATRICK OLIVAS, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>DIOCESE OF SAN DIEGO EDUCATION AND WELFARE CORPORATION, et al.,<br><br>Defendants. | CASE NO. 07cv1355-IEG(RBB)<br>Bankruptcy Case No. 07-00989-LA11<br>Adversary Case No. 07-90078<br><br>Order Denying Debtor's Motion to Withdraw Reference |

The Debtor, the Roman Catholic Bishop of San Diego ("Debtor"), has filed a motion pursuant to 28 U.S.C. § 157(d) to withdraw the reference to the bankruptcy court of 127 personal injury tort adversary actions involving allegations of sexual abuse. The Official Committee of

Unsecured Creditors ("Committee") has filed an opposition.[1] In addition, some of the plaintiffs in the individual adversary actions have filed oppositions joining in the arguments raised by the Committee. The Debtor has filed a reply.[2]

A hearing was held before Chief Judge Irma E. Gonzalez on August 17, 2007. Susan Boswell, Gerald Kennedy, and Geraldine Valdez appeared on behalf of the Debtor. James Stang and Robert Orgel appeared on behalf of the Committee. Victor Vilaplana appeared on behalf of the Organization of Parishes for the Roman Catholic Diocese of San Diego. Andrea Leavitt, Irwin Zalkin, Christine Bauer, and Laurence Drivon appeared on behalf of some of the individual plaintiffs in the adversary actions. Upon consideration, for the reasons set forth herein, the Debtor's motion is DENIED.

## *Discussion*

The Debtor moves to withdraw the reference based upon the provisions of 28 U.S.C. § 157(d). That section provides as follows:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

The Debtor argues this Court must withdraw the reference under the second sentence of § 157(d), or alternatively that it has shown cause allowing this Court to withdraw the reference under the first sentence of § 157(d).

*1. Mandatory Withdrawal*

The Debtor argues its challenge to the constitutionality of SB1779 requires withdrawal of the reference for the sexual abuse adversary actions under the second sentence of § 157(d). As set

---

[1] The Committee filed evidentiary objections regarding the declarations of Karen Landers, Daniel White, and Maria Roberts filed in support of the Debtor's motions. Although some of the evidentiary objections are well-taken, these declarations primarily provide background information. Therefore, the Court denies the Committee's motion to strike the objectionable portions of the declarations.

[2] The Debtor also filed evidentiary objections regarding Irwin Zalkin's declaration in support of the opposition to the motion. Mr. Zalkin's declaration primarily bears upon the merits of whether the cases should be remanded, and is of limited evidentiary value with regard to the current motion. Debtor's motion to strike portions of the declaration is denied.

1  forth above, § 157(d) requires the district court to withdraw the reference to the bankruptcy court
2  of any matter which requires "consideration of both title 11 and other laws of the United States
3  regulating organizations or activities affecting interstate commerce."  The Debtor must show: (1)
4  that the adversary proceedings require "material consideration of non-bankruptcy federal law," and
5  (2) that the non-bankruptcy federal law to be considered "regulat[es] organizations or activities
6  affecting interstate commerce."  <u>Security Farms v. International Brotherhood</u>, 124 F.3d 999, 1008
7  (9th Cir. 1997); <u>In re American Freight System, Inc.</u>, 150 B.R. 790, 793 (D. Kan. 1993).[3]

8        Congress intended the mandatory withdrawal provision to be construed narrowly so as not
9  to create an "escape hatch" by which most bankruptcy matters could easily be removed to the
10 district court.  <u>In re Vicars Ins. Agency, Inc.</u>, 96 F.3d 949, 952 (7th Cir. 1996).  "[S]ending every
11 proceeding that required passing 'consideration' of non-bankruptcy law back to the district court
12 would 'eviscerate much of the work of the bankruptcy courts'."  <u>Id</u>. (quoting <u>In re Adelphi
13 Institute, Inc.</u>, 112 B.R. 534, 536 (S.D.N.Y. 1990)); <u>see also</u> <u>In re American Freight System, Inc.</u>,
14 150 B.R. 790, 793 (D. Kan. 1993) ("consideration of the non-Code law must entail more than its
15 routine application to the facts").  As a result, the majority of courts require that "the issues in
16 question require more than the mere application of well-settled or 'hornbook' non-bankruptcy law;
17 'significant interpretation of the non-Code statute must be required."  <u>In re Vicars Ins. Agency,
18 Inc.</u>, 96 F.3d at 953; <u>see also</u> <u>Lifemark Hospitals v. Liljeberg Enterprises, Inc.</u>, 161 B.R. 21, 24
19 (E.D. La. 1993).

20       The Debtor's challenge to the constitutionality of SB1779 is not the type of issue which
21 requires withdrawal of the reference under the second sentence of § 157(d).  First, the Court does
22 not believe resolution of the Debtor's constitutional challenges will require "more than the mere
23 application of well-settled or 'hornbook' non-bankruptcy law."  <u>In re Vicars Ins. Agency</u>, 96 F.3d
24 at 953.  Both the state courts and Judge Hayes in the <u>Melanie H.</u> case have rejected the Debtor's

---

[3]Some courts have also found the second sentence of § 157(d) requires that the proceeding for which a party seeks withdrawal involve a matter of bankruptcy law.  <u>In re American Freight System, Inc.</u>, 150 B.R. at 793-794 (discussing cases and rationale behind reading the second sentence of § 157(d) to require a bankruptcy law nexus).  This Court is persuaded by the reasoning of the <u>In re American Freight System</u> court, and finds that the Debtor does not have to show these adversary actions involve issues of bankruptcy law in order to justify mandatory withdrawal.

1  facial constitutional challenges to SB1779 under the due process, ex post facto, and bill of
2  attainder clauses of the U.S. Constitution.  Although the Debtor would like to reopen the litigation
3  of the constitutionality of SB1779, the remaining constitutional issue to be litigated in these
4  adversary actions is whether the statute, as applied, violates the due process clause.  The contours
5  of the right to due process are well-established in this area, and the Court does not believe
6  resolution of the "as applied" constitutional challenge will require "material consideration" or
7  "significant interpretation" of the United States Constitution.
8       More importantly, however, the Debtor's constitutional challenge to SB1779 does not
9  "require consideration of both title 11 and other laws of the United States *regulating organizations*
10 *or activities affecting interstate commerce*."  In arguing that the mandatory withdrawal provision
11 of § 157(d) applies to its constitutional challenge to the state statute, the Debtor either reads out of
12 the statute the language "regulating organizations affecting interstate commerce," or
13 misunderstands the significance of Congress' reference of the Commerce Clause.  Congress
14 invokes its power under the Commerce Clause to regulate conduct, which would otherwise be a
15 matter of local concern.  United States v. Allen, 341 F.3d 870, 881-82 (9th Cir. 2003).  In this way,
16 Debtor is correct that § 157(d)'s use of the phrase "affecting interstate commerce" is a term of art
17 implying that Congress sought to exercise its Commerce Clause power broadly.  United States v.
18 Gillies, 851 F.2d 492, 493 (1st Cir. 1988).  However, a review of the cases cited by the Debtor
19 demonstrates these sexual abuse cases are not ones arising under "other laws of the United States
20 regulating organizations or activities affecting interstate commerce."
21      In Educational Credit Management Corp. v. Barnes, 259 B.R. 328, 329 (S.D. Ind. 2001),
22 the district court withdrew the reference of an adversary action challenging the constitutionality of
23 federal statutes and regulations regarding how federal student loan collection fees could be
24 charged.  Similarly, in In re American Freight Systems, the district court withdrew the reference of
25 an adversary action involving the Interstate Commerce Act finding "[t]he interpretation of the Act,
26 in particular the filed rate doctrine, will have a substantial impact on interstate commerce." 150
27 B.R. at 795.  In In re Chateaugay Corp., 108 B.R. 27, 28-29 (S.D. N.Y. 1989), the district court
28 withdrew the reference of an adversary action filed by the Pension Benefit Guaranty Corporation

("PBGC"), a wholly-owned United States Government corporation established under ERISA to administer failed pension plans, finding claims and objections "directly challenge the constitutionality of several ERISA provisions, and ... raise substantial novel issues of interpretation under Title IV of ERISA." Unlike the present adversary actions, all of these cases involve federal statutes regulating conduct within the scope of interstate commerce.

In its reply, the Debtor relies upon two additional cases where the district court withdrew the reference of actions brought under the Civil Rights Act of 1964, 42 U.S.C. § 1983. In re Baker, 86 B.R. 234 (D. Colo. 1988); In re Walton, 158 B.R. 939 (N.D. Ohio 1993). However, as the court in Walton noted, the Civil Rights Act of 1964 was enacted pursuant to Congress' powers under the Commerce Clause to regulate interstate commerce. 158 B.R. at 942 (citing Katzenbach v. McClung, 379 U.S. 294 (1964)). By contrast, an action alleging a violation of the federal constitution does not rely, as a source of authority, upon the Commerce Clause. If Congress intended all actions involving constitutional issues to be subject to mandatory withdrawal, it could have so provided. It did not. Instead, Congress in § 157(d)'s mandatory withdrawal provision requires district courts to withdraw the reference only for those cases involving the interpretation of federal laws "regulating organizations or activities affecting interstate commerce."

Also in its reply brief, the Debtor argues there is an interstate commerce nexus sufficient to satisfy the second sentence of § 157(d) because the Debtor provides pastoral services to members of the Catholic Church engaged in interstate travel. [Reply Brief, p. 5.] The case upon which the Debtor relies, however, discusses whether a Catholic Church-run camp had a sufficient nexus to interstate commerce, to allow regulation of its practices pursuant to the dormant Commerce Clause. Camps Newfound/Owatonna, Inc. v. Town of Harrison, 520 U.S. 564, 572-74 (1997). Section 157(d) does not require district courts to withdraw the reference as to any adversary action involving an entity engaged in interstate commerce. Instead, § 157(d) requires withdrawal of the reference of *proceedings* which require consideration of *laws* "regulating organizations or activities affecting interstate commerce." Taken to its logical conclusion, the Debtor's argument would require withdrawal of the reference of every adversary action against an entity engaged in interstate commerce even if the case was of a purely local nature. Debtor's proposed interpretation

of § 157(d)'s mandatory withdrawal provision is far broader than Congress intended. Therefore, the Court finds it is not required to withdraw the reference under the second sentence of § 157(d).

*2. Discretionary Withdrawal of the Reference*

Alternatively, the Debtor argues the Court should exercise its discretion to withdraw the reference of the sexual abuse cases to the Bankruptcy Court. In determining whether there is cause to withdraw the reference, "a district court should consider the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." Security Farms, 124 F.3d at 1008.

The Debtor argues the efficient use of judicial resources, as well as avoidance of undue delay and costs, favors withdrawal of the reference. There is no dispute that these cases are non-core proceedings and the District Court, rather than the Bankruptcy Court, must ultimately estimate or liquidate the value of the claims. 28 U.S.C. § 157(b)(2)(B) and (O) (liquidation and estimation of personal injury tort or wrongful death claims are not core proceedings); 28 U.S.C. § 157(b)(5) (district court "shall order that personal injury tort and wrongful death claims shall be tried in the district court . . . ."); In re Cinematronics, Inc., 916 F.2d 1444, 1541 (9th Cir. 1990) (because party had a right to a jury trial with regard to non-core proceedings, and because bankruptcy court lacked authority to conduct jury trials, district court's denial of motion to withdraw the reference was an abuse of discretion.).

The Debtor argues that because the Bankruptcy Court ultimately cannot adjudicate these issues, it would be a waste of resources to require parallel proceedings. The Debtor plans, in the very near future, to file motions to estimate the claims, and this Court will be required to formulate and adopt a plan for estimation. If this Court does not withdraw the reference, the Debtor argues the parties will be required to litigate the issue of how the cases should be estimated and liquidated both in this Court and in the Bankruptcy Court. If the Bankruptcy Court grants the motions to remand, now pending for hearing in 42 of the adversary actions, the Debtor argues it will be required to prepare for trial in state court at the same time it is formulating a plan for estimation of the claims in this Court.

In addition, the Debtor points out the Melanie H. case, pending before Judge Hayes,

1  presents the same issues for adjudication as the other Clergy II cases. As a result, the Debtor
2  argues it would be appropriate to adjudicate all of the remaining Clergy II cases in this Court.
3  Finally, the Debtor argues a remand to state court for purposes of trial is inconsistent with
4  Magistrate Judge Papas' ongoing mediation efforts. The Debtor argues any remand will impact
5  attempts to have the Clergy II claims estimated, will defeat the goal of equitable distribution under
6  a reorganization plan, and will result in Plaintiffs recovering on a "first come, first served" basis.
7       In opposition, the Committee argues judicial efficiency, avoidance of undue delay and
8  costs, uniformity of bankruptcy administration, and the prevention of forum shopping all weigh in
9  favor of leaving the adversary actions in the Bankruptcy Court at this time. The Committee does
10 not dispute that the Bankruptcy Court ultimately cannot conduct jury trials or estimate claims for
11 purposes of <u>distribution</u>. However, the Committee points out that estimation of a claim for
12 purposes of <u>confirming</u> a plan can be considered a core proceeding completely within the scope of
13 the bankruptcy court's powers. In re Aquaslide N'Dive Corp., 85 B.R. 545, 549 (Bankr. App. 9th
14 1987); In re G-I Holdings, Inc., 295 B.R. 211, 218-19 (D.N.J. 2003) (given its understanding of
15 the facts and issues in the case, the bankruptcy court was in a better position to initially determine
16 what estimation process should be used in asbestos adversary actions).
17      The valuation of the sexual abuse cases is one of the primary issues in the bankruptcy
18 proceeding, and the Committee argues withdrawal of the reference of these cases will undermine
19 the administration of the bankruptcy proceeding. The Committee argues the Court should not
20 withdraw the reference on these cases until Judge Adler has had the initial opportunity to consider
21 how and when to begin the estimation process in the overall context of the chapter 11 proceeding.
22 In addition, the Committee points out the adversary actions were pending in state court for four
23 years until the Debtor filed bankruptcy and removed them to the bankruptcy court. Although the
24 Debtor argues the Bankruptcy Court has done nothing with the adversary actions since their
25 removal, the Committee has filed motions to remand for which the Bankruptcy Court has set a
26 hearing on August 23, 2007. The Committee argues Magistrate Judge Papas can continue his
27 mediation of the value of the claims, and Judge Adler can rule on the remand motions, without this
28 Court becoming involved at this point of the proceedings. Finally, the Committee argues the

timing of the Debtor's motion, filed just before the Bankruptcy Court is set to hear the Plaintiffs' motions to remand, strongly suggests forum shopping.

Upon consideration of the arguments of the parties, the Court is persuaded that cause does not exist at this time to withdraw the reference of the 127 adversary actions. Valuation of the adversary actions is one of the central issues that must be resolved in the bankruptcy proceeding. At the proper time, if the parties cannot reach a settlement regarding the value of the adversary actions for purposes of distribution, this Court will need to estimate or liquidate the claims. However, at this juncture, the Bankruptcy Court is in the best position to determine from a case management standpoint how and when these actions should proceed for estimation or liquidation. The Bankruptcy Court made arrangements for Magistrate Judge Papas to conduct mediation proceedings, and initially stayed consideration of the Plaintiffs' remand motions pending the outcome of the mediation efforts. The Court is concerned that withdrawal of the reference at this time will cause undue delay, result in the inefficient use of judicial resources, and disrupt the orderly administration of the bankruptcy proceeding. The Bankruptcy Court has been managing these cases since they were removed from the state court within the context of the entire bankruptcy proceeding. That court is acutely aware of the positions of the parties regarding how and when a value should be fixed with regard to the adversary actions for purposes of formulating a plan of reorganization. The Court believes these issues are best left to the discretion of the Bankruptcy Court at this point in the proceedings.

The Court will, however, retain jurisdiction over the adversary actions. The Court sets a status hearing on Monday, November 26, 2007 at 10:30 a.m. to determine whether it would be appropriate to withdraw the reference of the adversary actions and proceed with the estimation or liquidation process. Prior to that hearing, the Debtor *shall not file* in this Court motions for estimation of the claims. On or before November 2, 2007, the Debtor shall file in this Court a status report and may at that time renew its motion for withdrawal of the reference. On or before November 16, 2007, the Committee and Plaintiffs may file their own status report.

### *Conclusion*

For the reasons explained above, the Court DENIES the Debtor's motion for withdrawal of

1 | the reference. The parties shall appear before Chief Judge Gonzalez in Courtroom 1 on Monday,
2 | November 26, 2007 at 10:30 a.m. for a status hearing. The Debtor shall give notice of this order to
3 | all parties forthwith. The Clerk shall docket this order in each of the related actions.
4 | **IT IS SO ORDERED.**

6 | DATED: August 20, 2007

*(signature)*
IRMA E. GONZALEZ, Chief Judge
United States District Court